

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-23-00077-CR

_____

MARVIN EDWARD ROBINSON, JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from County Court at Law No. 1
Wichita County, Texas
Trial Court No. CCL1-CR2022-1040

Before Birdwell, Womack, and Wallach, JJ.
Opinion by Justice Wallach

## OPINION

A jury convicted Marvin Edward Robinson, Jr. of failure to identify and assessed punishment at 180 days' confinement in the county jail and a $2,000 fine. *See* Tex. Penal Code Ann. § 38.02. The trial court sentenced Robinson accordingly, and he now appeals. In one issue, Robinson argues that the prosecutor "lessened the requisite burden of proof by impermissibly defining proof beyond a reasonable doubt as 'not far from' preponderance of the evidence, therefore denying [Robinson] of his due process right to be tried at the requisite burden of proof for a criminal proceeding." Because Robinson did not preserve his appellate complaint, we will affirm.

## Background

On the evening of July 3, 2022, Wichita County Deputy Sheriff Robert LaMel stopped Robinson's car because the car's rear license plate was not illuminated. *See* Tex. Transp. Code Ann. § 547.322(f). As seen in a video from LaMel's dashcam, LaMel repeatedly explained why he had stopped Robinson and asked Robinson to provide his license, or, if not his license, at least his name and date of birth. LaMel then had Robinson walk to back of the car and showed Robinson that his car's license plate was not illuminated. LaMel explained that a rear license plate must be illuminated under the Texas Transportation Code and again asked for Robinson's name. Robinson finally told

LaMel his birthdate and said that his name was "Marvin Bey."[1] Once someone from the county's dispatch informed LaMel that "Marvin Bey" was an alias, LaMel arrested Robinson. Robinson was subsequently charged by information with giving the officer a false name.

At voir dire, in explaining the State's burden, the prosecutor first told the jury that the State would have to prove each element of its case beyond a reasonable doubt and that it was not permitted to define "reasonable doubt" for the jury. The prosecutor then explained that reasonable doubt was not "beyond all doubt" and that unless a potential juror had witnessed the offense, the potential juror could not know beyond all doubt what had occurred:

> [PROSECUTOR]: I can tell you what [beyond a reasonable doubt] isn't. It is not beyond all doubt, right. Let me ask you this. [Venireperson], what's a way that you would have no doubt that something happened?

> VENIREPERSON: . . . . No doubt that something happened? If I was a witness to it.

> [PROSECUTOR]: Exactly. That is the best answer ever. That's the answer we are all looking for. And if you were a witness in this case, would you be sitting out here? You couldn't be a witness and a juror, right? So that's why the standard is not beyond all doubt. The only way you'd know for sure is if you're a witness to something, right?

---

[1]Robinson's use of "Bey" as an alias, as well as some of his statements to the officer and in the trial proceedings, indicate that he has sovereign-citizen beliefs. *See Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 242–45, 269, 272 (D.N.J. 2011); *El-Bey v. United States*, No. 1:08CV151, 2009 WL 1019999, at *1 (M.D.N.C. Jan. 26, 2009, order).

It's not beyond a shadow of a doubt. It's not absolute[ ] certainty. And it only applies to the elements of the offense, those elements that we talked about. On this day in Wichita County, Mr. Robinson gave a false or fictitious name to a guy he knew was a peace officer who had lawfully detained him. So if there's testimony of, oh, it was raining; it wasn't raining, do we have to prove that beyond a reasonable doubt? That it was raining? It's not an element. It doesn't really matter.

The prosecutor then used a visual aid—apparently a picture of a puzzle with some pieces missing—to further explain the concept of reasonable doubt:

[PROSECUTOR]: Can you help us all out? What is this a picture of?

VENIREPERSON: A gun.

[PROSECUTOR]: Okay. Are you sure?

VENIREPERSON: Looks like a gun to me.

[PROSECUTOR]: All right. Do you believe beyond a reasonable doubt this is a picture of a gun?

VENIREPERSON: Yeah.

[PROSECUTOR]: Even though we're missing some pieces here, right?

VENIREPERSON: Yeah.

[PROSECUTOR]: We can still tell it's a gun, right?

VENIREPERSON: Yep.

[PROSECUTOR]: So we believe—do you believe beyond a reasonable doubt that's a picture of a gun?

VENIREPERSON: That's a picture of a gun.

[PROSECUTOR]: Okay. Well, what about this puzzle piece over here, this piece of this leaf missing? Does that change your mind? Do you still believe beyond a reasonable doubt that's a picture of a gun?

4

VENIREPERSON: That's a picture of a gun.

[PROSECUTOR]: So that's a poignant illustration that's used in every courtroom in Texas every week. We get that.

The prosecutor then asked the jury if anyone would hold the State to a higher burden than beyond a reasonable doubt or if anyone would hold the State to a lesser burden. It was at this point that the prosecutor made the comments to which Robinson now objects.

[PROSECUTOR:] Anybody who would hold the State to a lower standard? We have all sorts of legal standards of proof. Like preponderance of the evidence, has anybody ever heard that term? No? So it's like a civil case, right? Like traffic accidents, if we had a hundred sheets of paper here, two stacks, a hundred sheets here, a hundred sheets here, it's just evidence that slightly tips the scale. So if I took one piece of paper from the 100 and 100 and turned it into 101 and 99, that would be a preponderance of the evidence, right? Or if we had a scale and I put it on the scale and tipped it down, that would be preponderance of the evidence. *But that is not far from what we're dealing with here.* Does everybody understand that and is good with that? [Emphasis added.]

Robinson represented himself at trial, and he did not object to the prosecutor's statement.

## Discussion

In his sole issue, Robinson argues that "[t]he State impermissibly commented on the burden of proof during voir dire by stating that the requisite burden of proof is 'not far from' a preponderance standard" and that "[b]ecause the prosecutor's comment—

5

and the trial's court failure to correct [it][2]—resulted in the jury receiving wrongful information as to the correct burden of proof, Mr. Robinson was deprived of a right . . . fundamental to the proper functioning of the judicial system." Citing *Tuazon v. State*, 661 S.W.3d 178, 194 (Tex. App.—Dallas 2023, no pet.), he argues that he was not required to object to preserve his argument for appeal because it involves a waivable-only right and that the error[3] resulted in egregious harm.

In *Tuazon*, the Dallas Court of Appeals held that the defendant, Tuazon, had a "waivable-only . . . due process right not to have *the trial court* define reasonable doubt in a manner that shifted the State's burden of proof." *Id.* at 192 (emphasis added) (citing *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), and that case's discussion of rights that may be waived but may not be forfeited by failing to object). The court then held that Tuazon's due process right had been violated because the trial court had defined the concept of beyond a reasonable doubt by stating that, if compared to a football field, the State was "not expected to have to take it all the way down to the

---

[2]To the extent that Robinson's inclusion of this clause was intended to argue the trial court had a duty to sua sponte correct the prosecutor's statement, it is the only part of his brief in which he raises the argument, and he does not support the argument with further analysis or any citations to authority. The argument is thus inadequately briefed, and we will not address it. *See* Tex. R. App. P. 38.1; *Bohannan v. State*, 546 S.W.3d 166, 179–80 (Tex. Crim. App. 2017).

[3]Although Robinson uses the word "error" to describe the prosecutor's action, in appellate practice, the word is ordinarily used to refer to trial court mistakes. *Johnson v. State*, 169 S.W.3d 223, 229 n.15 (Tex. Crim. App. 2005).

6

endzone, spike the football, and convince everybody beyond any shadow of a doubt, no possibility, . . . [i]t's just that little, tiny bit over the 50-yard line." *Id.* at 186. The appellate court held that the trial court's football field comparison had "effectively equat[ed] the beyond a reasonable doubt standard with the preponderance of the evidence standard." *Id.* at 194. Robinson argues that we should likewise hold that the prosecutor in this case equated the beyond-a-reasonable-doubt standard with the preponderance-of-the-evidence standard and that he was not required to object to the prosecutor's argument to preserve his complaint for appeal.

In *Marin*, the Court of Criminal Appeals described three categories of rights and each category's preservation requirement: (1) "absolute requirements and prohibitions," like jurisdiction, which may not be waived or forfeited through failing to object; (2) rights that may be plainly, freely, and intelligently waived but not forfeited, like the right to assistance of counsel and the right to a trial by jury; and (3) rights that may be forfeited. *Marin*, 851 S.W.2d at 278–79; *see Proenza v. State*, 541 S.W.3d 786, 792 (Tex. Crim. App. 2017). Most errors fall into the third category.

The *Marin* error-preservation categories are not based on the particular circumstances of the claim or the harm that the alleged error caused. *Proenza*, 541 S.W.3d at 795–96. Rather, a determination of whether a claim may be forfeited is based solely on the nature of the error. *Id.* at 796 (quoting *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014)). Thus, for claims based on comments made at trial, it

does not matter to a preservation analysis that some comments are worse than others. *Id.*

The nature of the error here is a prosecutor's alleged misstatement of the beyond-a-reasonable-doubt burden of proof. Even assuming that in this case the prosecutor's statement in context was as unambiguously incorrect as the one at issue in *Tuazon*, this case differs from *Tuazon* because in *Tuazon*, it was the trial court who made the challenged statement.

Notably, most of the cases on which Robinson relies for his argument involved voir dire comments by the trial court regarding the burden of proof.[4] Robinson cites one case, from the First Court of Appeals, for the proposition that a prosecutor's unobjected-to voir dire statements regarding the burden of proof could constitute fundamental error. *See Meadows v. State*, Nos. 01-09-00443-CR, 01-09-00444-CR, 2010 WL 2874199, at *6 (Tex. App.—Houston [1st Dist.] July 22, 2010, pet. ref'd) (mem. op., not designated for publication). *Meadows*, however, skipped any analysis of whether a prosecutor's comments could rise to the level of fundamental error and went

---

[4]He cites one case that, in addition to addressing the trial court's comments regarding the burden of proof, also addressed the appellant's complaint about the prosecutor's voir dire comments about the appellant's guilt and his criminal history. *See Hamson v. State*, No. 01-97-01408-CR, 1999 WL 312300, at *2–3 (Tex. App.—Houston [1st Dist.] May 13, 1999, no pet.) (not designated for publication). However, in that case, the prosecutor's challenged comments were not related to the burden of proof, and the appellate court disposed of the argument in a single sentence, holding that the appellant had forfeited his complaint by not objecting. *Id.* at *3.

straight to deciding whether the comments did so in that case and holding that they did not. *Id.* It thus does not provide us with any guidance on the issue, and it does not persuade us to depart from the line of case law, cited below, that addresses comments by prosecutors.[5]

<hr/>

[5]Additionally, *Meadows* pre-dated the *Proenza* opinion, which provided needed clarity regarding *Marin*'s error-preservation standards. *See Meadows*, 2010 WL 2874199, at *6 (citing the pre-*Proenza* plurality opinion in *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality op.)). In some more recent post-*Proenza* cases, other appellate courts have considered whether a prosecutor's statements in voir dire rose to the level of fundamental error. *See Green v. State*, No. 14-21-00316-CR, 2023 WL 2585935, at *6 (Tex. App.—Houston [14th Dist.] Mar. 21, 2023, pet. ref'd) (mem. op.); *Dixon v. State*, No. 07-16-00058-CR, 2022 WL 124568, at *13 (Tex. App.—Amarillo Jan. 13, 2022) (mem. op., not designated for publication), *opinion corrected on denial of reh'g*, No. 07-16-00058-CR, 2022 WL 1234096 (Tex. App.—Amarillo Apr. 25, 2022, no pet.) (order on reh'g), *and cert. denied*, 143 S. Ct. 2458 (2023); *Holland v. State*, No. 05-18-01419-CR, 2019 WL 6799755, at *4–5 (Tex. App.—Dallas Dec. 13, 2019, pet. ref'd) (mem. op., not designated for publication). However, none of these cases persuade us that Robinson's issue should be sustained. In each case, the appellate court held that the prosecutor's voir dire comments at issue did not rise to the level of fundamental error. *Green*, 2023 WL 2585935, at *6; *Dixon*, 2022 WL 124568, at *13; *Holland*, 2019 WL 6799755, at *5. Before reaching that conclusion, like the *Meadows* court, each court appeared to simply assume that such comments could be fundamental error. *Green*, 2023 WL 2585935, at *6; *Dixon*, 2022 WL 124568, at *13; *Holland*, 2019 WL 6799755, at *4. Accordingly, those opinions provide us with no persuasive analysis regarding whether a complaint about a prosecutor's voir dire comments can give rise to fundamental error.

Additionally, both *Dixon* and *Holland* stated that other comments or actions by the prosecutor mitigated the harm from the challenged comments. *See Dixon*, 2022 WL 124568, at *13; *Holland*, 2019 WL 6799755, at *4. While comments may be considered in context to determine whether a complained-of comment was actually improper or misstated the law, appellate courts may not consider the harm from a prosecutor's comments to determine whether a complaint about the comments was

9

On the other hand, in *Johnson v. State*, the Court of Criminal Appeals has provided us with guidance about when a prosecutor's act can result in reversal despite no error by the trial court. Although *Johnson* did not address preservation requirements, it pointed out the difference between the actions of the trial court and those of prosecutors: "[o]rdinarily, a conviction is not overturned unless the *trial court* makes a mistake," and "[t]here are just a few situations in which a conviction can be overturned even though the trial court has done nothing wrong." 169 S.W.3d at 228–29 (emphasis added). The few situations are generally those over which "neither the trial court nor the defendant has any control." *Id.* at 229; *see Darcy v. State*, 488 S.W.3d 325, 328 (Tex. Crim. App. 2016). For example, if a prosecutor suppresses exculpatory evidence or knowingly uses

forfeited. *See Proenza*, 541 S.W.3d at 791, 795–96 (stressing the importance of keeping questions of preservation and harm distinct from one another).

Further, in *Holland*, it is not entirely clear what standard the court applied in its analysis. *See Holland*, 2019 WL 6799755, at *4 (first citing Texas Rule of Evidence 103(d), which applies to evidentiary rulings and does not establish a freestanding fundamental-error standard separate from the one articulated in *Marin*, and then citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), which sets out the appropriate harmless-error review standard for jury charge error and does not apply outside the context of charge error); *see also Proenza*, 541 S.W.3d at 795 (discussing Rule 103(d) and stating that it does not create a "freestanding, harm-based doctrine of error preservation"); *Almanza*, 686 S.W.2d at 171 (setting out jury-charge harm standard); *cf. Prevost v. State*, No. AP-77,039, 2016 WL 748465, at *1 n.4 (Tex. Crim. App. Feb. 24, 2016) (not designated for publication) (noting that *Almanza* standard does not apply to complaints that do not concern jury-charge error). The year after *Holland* was decided, the same court decided *Davis v. State*, which, as noted below, took a different approach in reviewing a prosecutor's voir dire comments. No. 05-19-00508-CR, 2020 WL 3396440, at *4 (Tex. App.—Dallas June 19, 2020, no pet.) (mem. op., not designated for publication).

perjured testimony, neither the trial court nor the defendant is in a position to know about the wrongdoing when it occurs, and the trial court therefore cannot correct it. *Johnson*, 169 S.W.3d at 229.

Here, if Robinson had objected, the trial court could have provided any clarification or correction that was needed. *See, e.g.*, *Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023) (stating that the prosecutor's comments about which the appellant complained "could have been cured by a timely objection and instruction from the trial judge if the trial court had been placed on notice of the issue"); *Jones v. State*, No. 05-22-00555-CR, 2023 WL 7144643, at *4 (Tex. App.—Dallas Oct. 31, 2023, no pet. h.) (mem. op., not designated for publication) (noting that if the appellant had objected to the prosecutor's voir dire comment, "the trial court could have issued a curative instruction, and prospective jurors could have been questioned about how the statement might affect their deliberations"). Thus, we are not persuaded that we should treat the prosecutor's statement in this case the same way that we would address a trial court's misstatement of the burden of proof.

The Dallas Court of Appeals addressed a complaint about a prosecutor's voir dire comments in *Davis v. State*. 2020 WL 3396440, at *4–5. In that case, the appellant complained that, during voir dire, the prosecutor had "grossly misstated the law governing the presumption of innocence." *Id.* The appellate court noted that the appellant had cited no cases "holding that a *prosecutor's* statements about the

11

presumption of innocence during voir dire can rise to the level of fundamental error,"[6] and the appellate court had not found any such cases, either. *Id.* at *5 (emphasis added). The court then held that "if the prosecutor in this case misstated the law during voir dire, then we view those statements to be akin to an improper jury argument, which is forfeited if it is not preserved with an objection." *Id.*

We agree with that approach. This court and others have repeatedly held that complaints about a prosecutor's comments must be preserved by objection. *See Carson v. State*, Nos. 2-07-158-CR, 2-07-159-CR, 2008 WL 1867148, at *16 (Tex. App.—Fort Worth Apr. 24, 2008, no pet.) (mem. op., not designated for publication) (holding that by not pursuing his complaint to an adverse ruling, appellant had forfeited his complaint that during closing argument, prosecutor made up a definition of reasonable doubt and asserted that it was the legal definition); *see also Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (noting that "a defendant's 'right' not to be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by a failure to insist upon it"); *Davis*, 2020 WL 3396440, at *5; *Calhoun v. State*, No. 02-15-00323-CR, 2016 WL 3452915, at *4 (Tex. App.—Fort Worth June 23, 2016, no pet.) (mem. op., not designated for publication) (noting that "[t]o preserve error regarding improper voir dire questions or statements, a party must make a specific and timely objection");

---

[6] For purposes of this appeal, the phrase "fundamental error" refers to claims that fall into *Marin*'s first two categories, i.e., claims that we may "reach[ ] on appeal whether they were preserved at trial or not." *Proenza*, 541 S.W.3d at 794.

*Babineaux v. State*, Nos. 01-06-00608-CR, 01-06-00609-CR, 2007 WL 1953693, at *8(Tex. App.—Houston [1st Dist.] July 6, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that the appellant had failed to preserve his complaint that the prosecutor misstated the law during closing argument); *Barnes v. State*, No. 14-00-01444-CR, 2002 WL 373061, at *6 (Tex. App.—Houston [14th Dist.] Mar. 7, 2002, no pet.) (mem. op., not designated for publication) (holding that the appellant had not preserved his complaint that the definition of reasonable doubt given by the prosecutor during closing argument confused the jury and undermined the burden of proof); *Jenkins v. State*, 870 S.W.2d 626, 629 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (stating that the appellant had not preserved his complaint that during voir dire the prosecutor misstated the law regarding the burden of proof). By not objecting, Robinson failed to preserve his complaint.

If the prosecutor misstated the law regarding the burden of proof, Robinson was required to object to preserve his complaint. Because he did not object, he forfeited his complaint. We overrule his sole issue.

## Conclusion

Having overruled Robinson's issue, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Publish

Delivered:  February 8, 2024